# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WISCONSIN CENTRAL LTD., ) <br> an Illinois corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CATHERINE SHANNON and ) <br> NANCY McDONALD, ) <br> ) <br> Defendants. ) | No. 07 C 994 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Wisconsin Central Ltd. ("Plaintiff"), filed this action for declaratory and injunctive relief against Defendants Catherine Shannon ("Shannon"), the Director of the Illinois Department of Labor ("DOL"), and Nancy McDonald ("McDonald"), a DOL Compliance Officer, in their official capacities (collectively "the Defendants"). (R. 11, Am. Compl.) Plaintiff seeks a determination regarding whether overtime claims raised by Plaintiff's employees through the DOL under the Illinois Minimum Wage Law ("Wage Law"), 820 ILCS § 105/1-15, are preempted by the federal Railway Labor Act ("the Railway Act" or "the Act"), 45 U.S.C. §§ 151-188. (R. 11, Am. Compl. at 1.) Presently before the Court are the parties' cross-motions for summary judgment. (R. 21, Pl.'s Mot. for Summ. J.; R. 17, Defs.' Mot. for Summ. J.)[1] For the following reasons, Defendants' motion for summary judgment is denied, and Plaintiff's motion for summary judgment is granted.

---

[1] Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (R. 17), which this Court previously converted to a motion for summary judgment. (R. 20, Minute Order.)

1

# RELEVANT FACTS[2]

Plaintiff is an interstate freight railroad with operations in Illinois, Michigan, Minnesota, and Wisconsin. (R. 35, Defs.' Resp. to Pl.'s Facts ¶¶ 1, 6). Plaintiff is a rail "carrier" engaged in interstate commerce within the meaning of the Railway Act, 45 U.S.C. § 151, and is subject to the provisions of the Act. (*Id.* ¶ 1.) Plaintiff employs five categories of employees who perform work in Illinois: communications and signal employees ("CSEs"), conductors, locomotive engineers ("engineers"), maintenance-of-way employees ("MWEs"), and certain management employees. (*Id.* ¶ 7.) These employees also perform work for Plaintiff outside of Illinois on an on-going or intermittent basis. (*Id.*) The CSEs, conductors, engineers, and MWEs are members of bargaining units represented by labor organizations that the National Mediation Board ("Mediation Board") has certified pursuant to the Railway Act. (*Id.*) Each of the four labor organizations has negotiated a collective bargaining agreement ("CBA") with Plaintiff to govern the terms and conditions of employment for their respective members. (*Id.* ¶¶ 10, 12, 14, and 16.)

## A. The Overtime Applications

The DOL is an Illinois administrative agency possessed with authority to investigate and enforce overtime and other provisions of the Wage Law, which provides in pertinent part:

> [N]o employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed.

---

[2] These facts are derived from the parties' statements of fact filed pursuant to Local Rule 56.1 and are undisputed unless otherwise noted.

2

820 ILCS § 105/4a(1). Between April 2005 and November 2005,[3] the DOL received Minimum Wage and Overtime Claim Applications ("applications") from five of Plaintiff's employees ("claimants"), who alleged that Plaintiff had violated the Wage Law's overtime pay provision. (R. 38, Pl.'s Resp. to Defs.' Facts ¶ 2; R. 33-2, Defs.' Mem. in Supp., Ex. B, McDonald Decl., Group Ex. 1.) In their applications, all five claimants stated that they held the position of "Tech A, Signal Maintainer" with Plaintiff and that their primary duties were to maintain railroad crossings and signal systems, among other job responsibilities. (R. 38, Pl.'s Resp. to Defs.' Facts ¶ 4; R. 33-2, Defs.' Mem. In Supp., Ex. B, McDonald Decl., Group Ex. 1.) Four of the claimants listed a home address in Illinois, and one claimant listed a home address in Wisconsin. (R. 33-2, Defs.' Mem. In Supp., Ex. B., McDonald Decl., Group Ex. 1.) All five claimants stated in their applications that Plaintiff had an office in Illinois. (R. 38, Pl.'s Resp. to Defs.' Facts ¶ 3.)

McDonald was assigned to investigate the allegations contained in the applications. (Id. ¶¶ 5-6.) On August 22, 2006, McDonald sent a letter to Plaintiff's office in Homewood, Illinois, stating that the DOL was investigating whether Plaintiff violated the overtime pay provisions of the Wage Law with respect to the wages paid to its signal employees. (R. 11-7, Am. Compl., Ex. 5 at 1.) McDonald requested that Plaintiff provide payroll records relating to hours worked and wages paid to its signal maintainers from September 2003 to the present. (Id.; R. 38, Pl.'s Resp. to Def.'s Facts ¶ 8.)

---

[3] There appears to be a slight discrepancy in the record about precisely when Plaintiff's employees filed their applications with the DOL. (See R. 38, Pl.'s Resp. to Def.'s Facts ¶ 2; R. 33-2, Defs.' Mem. In Supp., Ex. B., McDonald Decl., Group Ex. 1.) This discrepancy does not affect the outcome of the parties' motions. For purposes of this opinion, we use the dates contained on the applications themselves.

3

On September 5, 2006, Constance Valkan ("Valkan"), Plaintiff's in-house counsel, replied to McDonald's letter, stating that Plaintiff's signal maintainers were represented by the Brotherhood of Railway Signalmen ("BRS"), and that the wages and hours of its signal maintainers, including overtime pay, were established by a CBA negotiated with BRS. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 19; R. 11-8, Am. Compl., Ex. 6 at 1.) Valkan also asserted that as applied to Plaintiff's unionized employees, the overtime pay provisions of the Wage Law were preempted by the Railway Act. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 19; R. 11-8, Am. Compl., Ex. 6 at 1-2.)

On January 29, 2007, McDonald responded to Valkan's letter, stating that because the DOL currently had no Chief Counsel, she was unable to obtain legal review of Plaintiff's position regarding preemption, and that she would be proceeding with her investigation. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 20.) McDonald informed Valkan that if Plaintiff did not voluntarily produce the payroll records she had requested in her August 22, 2006 letter, she would issue a subpoena calling for production of those records pursuant to 820 ILCS § 105/7(c). (*Id.*)

Shortly thereafter, DOL decided to expand the scope of its investigation to include all of Plaintiff's employees. (R. 38, Pl.'s Resp. to Defs.' Facts ¶¶ 11-12.) On March 2, 2007, DOL issued a subpoena to Plaintiff seeking time and payroll documents for every person employed by Plaintiff from September 1, 2003 through February 8, 2007. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 21; R. 11-9, Am. Compl., Ex. 7 at 2.) Those documents have not been produced, and because Plaintiff initiated this action, the DOL agreed to suspend the deadline for compliance with the subpoena pending a resolution of this lawsuit. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 21.)

B.  The Collective Bargaining Agreements

Plaintiff negotiated CBAs with the four labor organizations that represent Plaintiff's non-management employees. (R. 11, Am. Compl., Ex. 1-4, CBAs.)

BRS, the labor organization that represents CSEs employed by railroads in the United States, is a "representative" within the meaning of the Railway Act and was certified by the Mediation Board on April 4, 2003 to be the designated representative of Plaintiff's CSEs, including the five signal maintainers who filed complaints with the DOL. (R. 35, Defs.' Resp. to Pl.'s Facts ¶¶ 9, 19.) Among other provisions, the CBA negotiated with BRS contains provisions governing wage rates, work hours, and overtime pay. (R. 11-2, Am. Compl., Ex. 1.)

The United Transportation Union ("UTU") is the labor organization that represents conductors employed by railroads in the United States. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 11.) UTU is a "representative" within the meaning of the Railway Act and was certified by the Mediation Board on July 22, 1997, to be the designated representative of Plaintiff's conductors. (*Id.*) Among other provisions, the CBA negotiated with UTU contains provisions governing wage rates, work hours, and overtime pay. (R. 11-3, Am. Compl., Ex. 2.)

The Brotherhood of Locomotive Engineers ("BLE") is the labor organization that represents engineers employed by railroads in the United States. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 13.) BLE is a "representative" within the meaning of the Railway Act and was certified by the Mediation Board on July 22, 1997, to be the designated representative of Plaintiff's engineers. (*Id.*) Among other provisions, the CBA negotiated with BLE contains provisions governing wage rates, work hours, and overtime pay. (R. 11-4, Am. Compl., Ex. 3.)

5

The Brotherhood of Maintenance of Way Employees ("BMWE") is the labor organization that represents MWEs employed by railroads in the United States. (R. 35, Defs.' Resp. to Pl.'s Facts ¶ 15.) The BMWE is a "representative" within the meaning of the Railway Act and was certified by the Mediation Board on June 26, 2002, to be the designated representative of Plaintiff's MWEs. (*Id.*) Among other provisions, the CBA negotiated with BMWE contains provisions governing wage rates, work hours, and overtime pay. (R. 11-5, Am. Compl., Ex 4.)

## PROCEDURAL HISTORY

On February 21, 2007, Plaintiff filed a complaint in this Court seeking declaratory and injunctive relief regarding whether the DOL has jurisdiction to enforce the Wage Law with respect to Plaintiff's unionized employees. (R. 11, Am. Compl. ¶¶ 1-35.) Each party now moves for entry of summary judgment in their favor.

Plaintiff argues that it is entitled to summary judgment because the DOL's enforcement of the Wage Law is preempted in two respects: (1) enforcement will require interpretation of the CBAs that govern the terms of employment of Plaintiff's unionized employees and thus is preempted by the Railway Act; and (2) enforcement of the Wage Law is preempted under the doctrine of field preemption by the broad panoply of federal laws that regulate the interstate rail industry. (R. 22, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1-2.) Conversely, Defendant argues that it is entitled to summary judgment because the Wage Law merely creates a minimum labor standard applicable to all Illinois workers and is not in conflict with, or preempted by, federal labor laws. (R. 18, Def.'s Mem. in Supp. of Mot. for Summ. J. at 1-2.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In deciding a motion for summary judgment, the Court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). When deciding cross-motions for summary judgment, the Court must "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Amer. Home Assurance Co.*, 400 F.3d 523, 526 (7th Cir. 2005).

## ANALYSIS

The Railway Act imposes a duty on rail carriers and their employees to make and maintain agreements "concerning rates of pay, rules and working conditions." 45 U.S.C. § 152. The Act also creates a comprehensive arbitral mechanism for the "prompt and orderly settlement" of disputes regarding those agreements. 45 U.S.C. § 151a(5). Congress intended the arbitral procedures established by the Railway Act to be mandatory and exclusive, and therefore neither state nor federal courts have jurisdiction to entertain disputes covered by the Act. *Andrews v. Louisville & N. R.R. Co.*, 406 U.S. 320, 322-25 (1972).

There are two classes of disputes covered by the Railway Act: "major disputes," which seek to create contractual rights, and "minor disputes," which seek to enforce those rights. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). Minor disputes are those that grow "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Thus, the Railway Act preempts state law claims whose adjudication requires the application or interpretation of a CBA negotiated pursuant to the terms of the Railway Act.[4] *Hawaiian Airlines*, 512 U.S. at 252; *see also Gunther v. San Diego & A.E.R. Co.*, 382 U.S. 257, 261 (1965) (Congress vested Railway Act arbitration boards with exclusive jurisdiction to interpret CBAs because they are "peculiarly familiar with the thorny problems and the whole range of grievances that constantly exist in the railroad world.").

Here, Plaintiff argues that the overtime claims being investigated by the DOL constitute minor disputes within the meaning of the Railway Act. (R. 22, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 2-10.) To determine whether a minor dispute exists, the Court must consider whether resolution of the overtime claims would require the application or interpretation of the CBAs. Plaintiff argues that any calculation of overtime would require interpretation and application of the CBAs to determine both the "hours worked" and the "regular rate of pay" components of the overtime formula applicable under the Wage Law. (R. 22, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5-10; R. 37, Pl.'s Reply Mem. at 4.)

---

[4] This is the same standard applicable to preemption under Section 301 of the Labor Management Relations Act ("LMRA"). *See Hawaiian Airlines*, 512 U.S. at 261-63 & n.9 (discussing preemption standard adopted in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988)). Thus, cases involving preemption under the LMRA are instructive to the case at bar.

8

DOL regulations implementing the Wage Law define "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110. This includes meal periods and time spent on-call away from the employer's premises, when such time is spent predominantly for the benefit of the employer. *Id.* Determining the time Plaintiff's employees are required to be "on duty," or at Plaintiff's premises or other locations, will require interpretation of the CBA provisions governing job duties. (*See* R. 11, Am. Compl., Ex. 1-4.) Further, under various circumstances covered by the CBAs, Plaintiff's employees are paid for hours during which they are not performing their primary duties, such as when they are attending a training, appearing in court as a witness for the railroad, or are "held away" from their home terminal for a specified period. (*See, e.g.*, R. 11-3, Am. Compl., Ex. 2, Art. 6, Art. 21; R. 11-5, Am. Compl., Ex. 4, Rule 29.) Calculating an overtime claim would require determining the specific circumstances under which an employee received compensation for a given period, and interpreting the relevant CBA provisions to determine whether the paid hours qualify as "hours worked" under the Wage Law. The CBAs also contain various provisions governing meal periods, on-call requirements, and travel time, all of which would need to be interpreted and applied in order to determine whether Plaintiff's employees were paid overtime wages in accordance with the Wage Law.

Similarly, "regular rate" is defined by DOL regulations to include all remuneration for employment paid to, or on behalf of, the employee. 56 Ill. Admin. Code § 210.410. Certain types of payments are excluded from the "regular rate," such as payments made for "occasional periods when no work is performed due to a vacation, holiday, illness, failure of employer to

9

provide sufficient work, or other similar cause." *Id.* § 210.410(b). Also excluded is any premium pay made to the employee. *Id.* § 210.410(g). The regular rate can under certain circumstances include meals, lodging, and other fringe benefits. *Id.* § 210.200(a). Here, the CBAs contain numerous provisions governing base pay, premium pay, vacation pay, sick leave, personal leave, meals, lodging, and other fringe benefits that would have to be interpreted to determine the "regular rate" that applied to each of Plaintiff's employees for any given period. (*See* R. 11, Am. Compl., Ex. 1-4.) For these reasons, the Court agrees with Plaintiff that the overtime claims involve application and interpretation of the CBAs.

Although the Seventh Circuit has not ruled on this specific issue, courts in other jurisdictions have held that state law overtime claims are preempted by the Railway Act. For instance, in *Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 13 (1st Cir. 2001), the First Circuit addressed a similar set of facts involving a group of flight attendants who claimed they were not paid overtime by their employer in compliance with a state wage and hour law.[5] The Court noted the "peculiarities of industry-specific wage and benefit structures" that were apparent in the CBA at issue there, and concluded that interpretation and application of CBA provisions governing base and overtime pay, uncompensated work and standby time, maternity leave, meal periods, vacation, Christmas bonuses, and sick leave would be necessary to assess the plaintiffs' claims. *Id.* at 13-16. The Court rejected the defendant's argument that all that would be required is "mere reference to the terms of the [CBA], or to a calendar and a clock," and found that the claims required analysis of the CBA and were thus preempted. *Id.* at 16; *see also Penn. Fed'n of*

---

[5] The Railway Act also applies to the air transportation industry. *See* 45 U.S.C. §§ 181-88.

10

*BMWE v. Amtrak*, 989 F.2d 112, 115 (3d Cir. 1993) (state law overtime claim preempted by Railway Act because evaluating claim required interpretation of CBA as to employee's job duties); *Amariglio v. Nat'l R.R. Passenger Corp.*, 941 F. Supp. 173, 180 (D. D.C. 1996) (employee's wage and hour violation claims preempted by Railway Act because they required interpretation of CBA). We find the analysis in these cases persuasive.

Defendant argues that the overtime claims require only "consultation" with—and not interpretation of— the CBAs because, in Defendant's view, "employees either worked a number of hours or they did not." (R. 33, Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5.) Defendant is correct that a mere "glance" at a CBA is not enough for a claim to be preempted. As the Seventh Circuit explained in a case brought under the LMRA, "the overriding principle is that for preemption to apply, *interpretation* of the CBA and not simply a reference to it is required." *In re Bentz Metal Prod. Co.*, 253 F.3d 283, 289 (7th Cir. 2001) (emphasis in original). However, as applicable here, the Court also observed that "[i]f the entitlement to wages (or other employee pay) or the amount due were at issue, the CBA would control; almost certainly, interpretation of the agreement would be necessary." *Id.* Determining whether Plaintiff's employees worked a particular number of hours and what pay they received is not a matter of simply looking at their pay stubs, but instead requires interpretation and application of various provisions contained in the CBAs.

Defendant also argues that the Wage Law claims are not preempted because they involve rights wholly independent of the CBAs that "apply to all workers in the State of Illinois, unionized or not." (R. 18, Def.'s Mot. for Summ. J. at 7.) However, a claim is preempted under the Railway Act if it requires interpretation or application of a CBA, even if the claim involves

11

rights that are independent of those arising from the CBA. *See Hawaiian Airlines*, 512 U.S. at 252-53; *see also In re Bentz*, 253 F.3d at 287 (observing that under Supreme Court case law, preemption principles can reach "far beyond" claims founded on rights created by CBA).

The Seventh Circuit's analysis in *Monroe v. Missouri Pac. R.R. Co.*, 115 F.3d 514 (7th Cir. 1997), is instructive. In that case, an employee sued his former employer, a railroad, for wrongful discharge after he was terminated for misrepresenting his physical condition while on medical leave. *Id.* at 515-16. He alleged that the railroad discharged him in an attempt to defeat his rights under the Federal Employers Liability Act ("FELA") and under Illinois law to collect for work-related injuries. *Id.* at 516. A CBA governed the terms of the plaintiff's employment, and the railroad argued that his claims were minor disputes preempted by the Railway Act. *Id.* The plaintiff argued that his claims were not preempted because they were not based on rights given by the CBA, but were instead independently based on rights conferred by FELA and state law. *Id.* at 517. He also contended that adjudication of his complaint did not require any interpretation of the CBA because the only questions for the court were factual ones, namely, whether he had been discharged and, if so, whether the railroad had an improper motive in discharging him. *Id.* at 518.

The Seventh Circuit observed that "an uncritical glance" at the plaintiff's claims suggested that there was no preemption, because the *source* of his claims was independent of the CBA; however, a closer inspection revealed that the plaintiff's claims involved numerous issues requiring interpretation and application of the CBA. *Id.* For instance, a court would be required to interpret the CBA in order to determine the validity of the arguments regarding the railroad's alleged retaliatory intent. *Id.* Also, the Court observed, the plaintiff's claims "involve past and

future wages, benefits, and promotions—all of which are determined by the CBA." *Id.* at 518. Because analysis of the plaintiff's claims would require interpretation and application of the CBA, the claims were preempted by the Railway Act. *Id.* at 519.

Similarly, here, even though the overtime claims stem from rights afforded under the Wage Law, they cannot be resolved without interpreting and applying numerous provisions of the CBAs. *See id.*; *see also Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996) ("plaintiffs' claims are minor disputes if they depend not only on a right found in the CBAs, but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship."); *Kollar v. United Transp. Union*, 83 F.3d 124, 126 (5th Cir. 1996) (Railway Act preempted state law fraud claim even though it involved rights separate from the CBA because claim required determination of plaintiff's seniority, which was governed by a CBA).

Therefore, because the overtime claims being investigated by the DOL involve interpretation and application of various provisions of the CBAs, the claims are preempted by the Railway Act.[6]

---

[6] Because we conclude that the overtime claims are preempted by the Railway Act, we need not reach Plaintiff's alternative argument that the claims are preempted because Congress intended to occupy the entire field with respect to the work hours of railroad employees. (*See* R. 22, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 10-13.) We note, however, that there is little support for this broad argument, aside from the Sixth Circuit case cited in Plaintiff's brief. (*See id.* at 11 (*citing R.J. Corman R.R. Co. v. Palmore*, 999 F.2d 149 (6th Cir. 1993).) The Supreme Court has never recognized field preemption in this specific area. *See Terminal R.R. Ass'n v. Trainmen*, 318 U.S. 1, 6-7 (1943) ("the enactment by Congress of the Railway Labor Act was not a preemption of the field of regulating working conditions themselves"); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) (preemption "should not be lightly inferred . . . since the establishment of labor standards falls within the traditional police power of the State.").

13

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (R. 17) is denied, and Plaintiff's motion for summary judgment (R. 21) is granted. Defendants' enforcement of the overtime provisions of the Illinois Minimum Wage Law with respect to Plaintiff's unionized employees is preempted by the Railway Labor Act. The Clerk of the Court is directed to enter final judgment for the Plaintiff.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: September 21, 2007**